Filed 2/23/22  P. v. Ortiz CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

THE PEOPLE,

      Plaintiff and Respondent,

v.

ANTHONY MARK ORTIZ,

      Defendant and Appellant.

E077527

(Super.Ct.No. FVI015637)

OPINION

APPEAL from the Superior Court of San Bernardino County.  John M. Tomberlin, Judge.  Affirmed.

Anthony Mark Ortiz, in pro. per., and Thomas E. Robertson, under appointment by the Court of Appeal, for Defendant and Appellant.

Defendant and appellant, Anthony Mark Ortiz, filed a petition for resentencing pursuant to Penal Code section 1170.95,[1] which the court denied. After defense counsel filed a notice of appeal, this court appointed counsel to represent defendant.

Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the facts, a statement of the case, and identifying three potentially arguable issues: (1) whether the trial court erred in disregarding the codefendant's confession to being the actual killer in finding defendant prima facie ineligible for relief; (2) whether the court erred in concluding the jury's true finding on the personal use of a firearm causing death enhancement foreclosed defendant from relief as a matter of law; and (3) whether the court prejudicially erred in holding the hearing in defendant's absence.

Defendant was offered the opportunity to file a personal supplemental brief, which he has done. Defendant contends the court erred in denying his petition because he (1) was not the actual killer; (2) did not, with the intent to kill, aid and abet the actual killer in the commission of the murder; and (3) was not a major participant in a felony acting with reckless indifference to human life. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[2]

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

[2]  On the court's own motion, we take judicial notice of our prior nonpublished opinion from defendant's previous appeal. (*People v. Ortiz et al.* (Mar. 15, 2007, E037982) [nonpub. opn.] (*Ortiz*); Evid. Code, §§ 452, 459; Cal. Rules of Court, rule 8.1115(b).)

On August 11, 2002, a vehicle pulled up alongside the victim in a parking lot. Defendant was the driver of the car, described by the eyewitnesses as the "White guy"; defendant's codefendant, Brandon Jamaal O'Guynn, "the Black guy," was the passenger. After one of the defendants said something that drew the victim's attention, the victim walked over to defendants' car. (*Ortiz*, *supra*, E037982.)

As the victim approached the driver's side window, three shots were fired at close range with a nine-millimeter handgun. Each shot hit the victim in the chest. After the shooting, defendant, with O'Guynn in the passenger seat, sped away. The victim died in the parking lot as his wife chased the defendants' vehicle yelling out the numbers on the vehicle's license plate. (*Ortiz*, *supra*, E037982.)

Defendant drove to the home of his brother. Once there, defendants told others about the shooting. According to several witnesses, O'Guynn claimed that he had been the shooter. Defendant's brother told the police and testified at trial that O'Guynn said that he had shot the victim. After learning that the victim had died, O'Guynn gave the gun to someone to hide. The gun was eventually thrown into a lake where officers later recovered it. (*Ortiz*, *supra*, E037982.)

Forensic analysis of the bullets recovered from the body of the victim established that they had been fired from the gun recovered from the lake. In a search of O'Guynn's bedroom, officers recovered a plastic baggie that held three bullets, two of which were nine-millimeter. Defendant's brother testified the gun recovered from the lake belonged to O'Guynn who, according to defendant's brother, always carried a weapon. (*Ortiz*, *supra*, E037982.)

3

O'Guynn argued that defendant's brother fabricated what he had told others and the police to protect defendant and place blame for the shooting on O'Guynn. Another witness testified that he had been threatened by defendant's brother who had told him that O'Guynn was the shooter. (*Ortiz*, *supra*, E037982.)

Both defendants initially denied participation in the shooting when questioned by officers; however, by the time of trial, the only issue was which of them had been the actual shooter. The prosecutor's theory was that O'Guynn was the shooter, and defendant had aided and abetted that crime by driving the car. The victim's girlfriend testified that the driver of the car was the shooter; she recalled seeing a White hand holding a black gun. She identified the passenger as a Black man and stated that he just sat there during the shooting. The only other eyewitness concurred that the shooter was the White, driver of the car. (*Ortiz*, *supra*, E037982.)

Following a joint trial, the jury found defendant and O'Guynn guilty of first degree murder. With respect to defendant, the jury further found true the special allegation under section 12022.53, subdivision (d), that in the commission of the crime, defendant personally and intentionally discharged a firearm, which proximately caused great bodily injury and death. Based on the jury's verdict and true finding, the trial court sentenced defendant to a term of 25 years to life in state prison on the first degree murder conviction and an additional consecutive term of 25 years to life in prison on the section 12022.53 personal gun use enhancement. (*Ortiz*, *supra*, E037982.)

Both defendants appealed. O'Guynn contended insufficient evidence supported his conviction for first degree murder. This court held that the evidence was insufficient

to support the verdict finding O'Guynn guilty of first degree murder; this court reversed his conviction on that charge. (*Ortiz*, *supra*, E037982.)

Defendant contended, in pertinent part, that insufficient evidence supported the jury's true finding on the allegation that he personally used a handgun causing death. Defendant argued that the jury's finding was not supported due to defects in the witnesses' credibility. This court held that by virtue of their true finding, the jury resolved the credibility issues and the conflicts in evidence against defendant. Thus, because there was evidence to support the jury's finding that defendant was the actual shooter, this court affirmed the jury's true finding on the enhancement. (*Ortiz*, *supra*, E037982.)

On January 14, 2019, defendant filed a form petition for resentencing pursuant to section 1170.95. Defendant contended he (1) was not the actual killer; (2) did not, with the intent to kill, aid and abet the actual killer in the commission of the murder; and (3) was not a major participant in a felony acting with reckless indifference to human life. In an addendum to the petition, defendant maintained that, at trial, the prosecution affirmed he was not the actual killer, that O'Guynn was the actual killer, but that defendant should be held liable under the felony-murder rule. Defendant contended that new evidence, consisting of a notarized confession by O'Guynn stating he was the shooter, proved that defendant was not the actual killer.[3] Defendant also noted that witnesses at trial testified that O'Guynn had confessed to being the shooter.

---

[3] No notarized confession by O'Guynn was attached to the petition.

5

On March 19, 2019, the People filed a motion to strike defendant's petition for resentencing based on the purported unconstitutionality of section 1170.95. The People requested judicial notice of our nonpublished opinion in *Ortiz*, *supra*, E037982, which they attached to the motion. The People also requested the court take judicial notice of the trial records in the case.

On May 10, 2019, the trial court appointed counsel for defendant. On February 21, 2020, the court inquired whether the jury had found that defendant was the actual killer. The People responded that the jury had found defendant was the actual killer who shot the victim. The court asked if there was an appellate decision in the matter. The People responded that there was, and there had been "no argument by the People in this case of []natural [and] probable consequences or felony murder. It was strictly aiding and abetting [a] principal."

The court granted defense counsel a continuance to file a reply but noted, "[I]f the jury convicted him, found him to be the person who was the actual killer and the appellate record so indicates, there's a real good opportunity for you to expect that I'm going to be striking this petition because I don't see how [defendant] could possibly be eligible. I'm not going to retry the case. . . . I don't think . . . the legislat[ure] intended that these cases be relitigated for the factual determination that the jury made."

On July 22, 2020, defendant filed a motion pursuant to *People v. Franklin* (2016) 63 Cal.4th 261, the majority of which made arguments for why his murder conviction

6

should be set aside pursuant to section 1170.95.[4]  On March 5, 2021, defendant filed an application for resentencing pursuant to section 1170, subdivision (d), to which he attached a signed declaration from O'Guynn in which O'Guynn wrote that he shot the victim in order to protect defendant.

At the hearing on July 30, 2021, defense counsel noted that defendant was not present despite the court's order, and "he wants to be here for his hearing."  The court noted, "I don't think he's going to be transported . . . ."  Defense counsel asked, "Why not?"  The People observed that due to Covid-19 protocols, there were some "hiccups," and prisoners had to be quarantined in the jail for two weeks before being transported to court.

The court asked if there had been a prima facie hearing yet.  Defense counsel responded that there had not, but that "my client would—he has asserted he wants to be present for that when that happens."  The court stated, "I don't believe there's any basis for determining that he has a right to be here for me to determine whether or not there's a prima facie basis."  Defense counsel responded, "I would need to research that issue, Your Honor, because I think he does."  The People noted that there was no "case or statute that says the defendant has to be present."  Defense counsel responded, "I would like to research it, Your Honor.  I know that these hearings are very important, and it matters greatly to my client."

---

[4]  Pages 135 to 176 of the motion make up the bulk of defendant's supplemental brief on appeal.

The court observed, "It does matter to your client, but your client was found to be what? What was the—personal use of a firearm, a determination that was made by a jury in this case." Defense counsel responded, "[T]he jury had found a finding but the finding was disputed, and it seemed like the prosecutor in that case had presented evidence to the otherwise or to the contradiction of that . . . ." The court replied, "[Y]ou're going to tell me . . . that even though the jury found that he personally discharged a firearm causing death, that he is entitled to be considered as someone who is neither the personal killer nor a person who's an active participant in a crime. Those are the standards that I'm looking for. [¶] . . . [¶] . . . I don't see how you avoid the application of a jury's decision that he was the person who discharged the gun causing death."

Defense counsel argued that defendant had made a prima facie case for relief. He noted that the prosecutor had argued throughout the trial, including during his closing argument, that defendant was not the shooter.

Further, defense counsel stressed, "[M]y client wants to be here for this, Your Honor. He's actually helped me. He's been doing tons of research himself. We have him on the way here." The court responded, "The full argument is to be made [once] there is a prima facie case showing. That's when you get the opportunity to make an evidentiary argument for me to have an evidentiary hearing." Defense counsel responded, "Your Honor, my client wants to be here for these things."

The People noted, "[T]he argument was a little different than counsel is characterizing. The argument that I made to the jury was that both defendants were guilty on an aiding and abetting theory, which has nothing to do with felony murder, and

8

that their job was to determine who was the shooter. I said what the People believe is irrelevant, and that's what I put in the record. So the jurors did what their job is. [¶] We argued both because of the acts of both of the people involved, that both of them had enough culpability to be convicted of murder. We didn't rely on . . . felony murder. The jury used the testimony that the victim's wife, who was present, who said . . . the gun was being held by a White hand. The defendant was the Caucasian in the car, and the African American in the car she said was not the shooter. So the jurors went with the victim's wife's testimony and went that way. And that's where the verdict came from. The appellate court has looked at this. The appellate court saw no problems with the conviction nor the use allegation."

The People further argued, "So the appellate record and the verdict forms show that the jury felt that [defendant] was the shooter in this case. . . . [¶] And again, the theory was they went there to kill him. They drove the car over there, pulled up next to him and executed him. So there was not a need for a felony-murder argument."

The court ruled, "I think the fact there was a jury finding . . . that [defendant] was the person [who] discharged the gun causing death, renders him ineligible for the relief . . . . There is no prima facie showing, so your petition is denied."

## II. DISCUSSION

Defendant contends the court erred in denying his petition because he (1) was not the actual killer; (2) did not, with the intent to kill, aid and abet the actual killer in the commission of the murder; and (3) was not a major participant in a felony acting with reckless indifference to human life. We disagree.

9

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.'" (*Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

In this case, the superior court denied defendant's petition at the prima facie stage under section 1170.95, subdivision (c). "A denial at that stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.] This is a purely legal conclusion, which we review de novo." (*People*

*v. Murillo* (2020) 54 Cal.App.5th 160, 167, review granted Nov. 18, 2020, S264978; accord, *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1137, 1142, review granted Oct. 14, 2020, S264284.)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "'[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Ibid*.) "Appellate opinions . . . are generally considered to be part of the record of conviction." (*Id.* at p. 972.) "[T]he parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief . . . ." (*Ibid*.)

Here, the opinion reflects that defendant was the actual killer, which renders defendant ineligible for section 1170.95 relief. According to the eyewitnesses, defendant, the "White guy," was the driver of the vehicle; O'Guynn, "the Black guy," was the passenger. The victim leaned toward the driver's side window where three shots were fired at close range. After the shooting, defendant, with O'Guynn in the passenger seat, sped away. The victim's girlfriend testified that the driver of the car was the shooter; she recalled seeing a White hand holding a black gun. She identified the passenger as a Black man and stated that he just sat there during the shooting. The only other eyewitness concurred that the shooter was the White guy and the driver of the car. The jury expressly found that defendant was the actual killer by rendering its finding on the

personal use of a firearm causing death enhancement. (*Ortiz*, *supra*, E037982.) Thus, as the actual killer, defendant is ineligible for relief as a matter of law. (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248 [Even under the amended statue, a defendant remains liable for murder if he was the actual killer.]; accord *People v. Cornelius* (2020) 44 Cal.App.5th 54*,* 58 [disagreed with to the extent inconsistent with *Lewis*]; see *People v. Edwards* (2020) 48 Cal.App.5th 666, 674-675 [Where the record of conviction, including the opinion from a direct appeal, reflected the defendant was the actual killer, he was not entitled to relief pursuant to section 1170.95], overruled on other grounds in *Lewis*, *supra*, 11 Cal.5th at p. 963.) Therefore, the superior court properly denied defendant's section 1170.95 petition.

Defendant contends that the "new" evidence of O'Guynn's confession, when considered with the testimony and the prosecutor's argument at trial, demonstrate that O'Guynn, rather than defendant, was the actual shooter. We disagree. As this court noted in defendant's previous appeal, the prosecutor's theory that O'Guynn was the shooter "lost viability when both eyewitnesses testified that the driver was the shooter." (*Ortiz*, *supra*, E037982.) Moreover, as previously noted, the jury expressly found that defendant was the actual killer by rendering its finding on the personal use of a firearm causing death enhancement. Thus, the court below correctly ruled that, at least at the prima facie stage, defendant was not entitled to relitigate factual questions already determined by the jury. (*People v. Secrease* (2021) 63 Cal.App.5th 231, 247 ["[S]ection 1170.95 does not allow relitigation of factual questions that were settled by a prior jury . . . ."].)

## III.  DISPOSITION

The order denying defendant's section 1170.95 motion is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____

Acting P. J.

We concur:

MILLER _____

J.

CODRINGTON _____

J.